212 P.3d 1243 (2009)
346 Or. 415
FRIENDS OF THE COLUMBIA GORGE, INC., Collyn Baldwin, Claudia Curran, Eric Lichtenthaler, Phil Pizanelli, Dixie Stevens, Kimberlee Thorsell, Peter Thorsell, Brian Winter and Cynthia Winter, Petitioners on Review, and
Beverly Klock and Clair Klock, Petitioners,
v.
COLUMBIA RIVER GORGE COMMISSION, Respondent on Review.
(CRGC No. OA-06-01; CA A133281; SC S055915).
Supreme Court of Oregon, En Banc.
Argued and Submitted October 29, 2008.
Decided July 16, 2009.
*1244 Gary K. Kahn, of Reeves, Kahn & Hennessy, Portland, argued the cause and filed the brief for petitioners on review.
Jeffrey B. Litwak, White Salmon, Washington, argued the cause and filed the brief for respondent on review.
GILLETTE, J.
This administrative law case is one of three cases filed by the Friends of the Columbia Gorge and others (Friends), challenging various actions taken by the Columbia River Gorge Commission (the commission) under the Columbia River Gorge Scenic Area Management Plan (management plan). In this case, Friends challenges the commission's decision to reject a proposed Multnomah County land use ordinance intended to implement the management plan with respect to the treatment of historic buildings. Under the commission's interpretation of the management plan, Multnomah County did not have the range of discretion that it claimed to have in adopting its proposed land use ordinance. On review, the Court of Appeals concluded that the commission's interpretation was entitled to judicial deference under federal interpretive principles. Friends of Columbia Gorge v. Columbia River (A133281), 218 Or.App. 261, 179 P.3d 700 (2008) (Friends (A133281)). We allowed Friends' petition for review and now affirm the decision of the Court of Appeals.
The statutory, regulatory, and procedural background of this case is discussed in detail in the two related cases between the same parties that this court decides today, Friends of Columbia Gorge v. Columbia River (S055722), 346 Or. 366, ___ P.3d ___, 2009 WL 2046485 (2009) (Friends (S055722)), and Friends of Columbia Gorge v. Columbia River (S055916), 346 Or. 433, ___ P.3d ___, 2009 WL 2046513 (2009). We briefly summarize that background as it is relevant here.
In 1986, Congress passed the Columbia River Gorge National Scenic Act, 16 U.S.C. §§ 544-544p, which created the Columbia River Gorge National Scenic Area in Oregon and Washington. The purpose of the Act was twofold: to protect the scenic, cultural, recreational, and natural resources of the Columbia River Gorge, and to protect and support the economy of the area by encouraging growth in existing urban areas and by allowing future economic development while protecting the area's resources. 16 U.S.C. § 544a.
The Act authorized Oregon and Washington to enter into an interstate compact and to create a regional agency, the Columbia River Gorge Commission, which, in cooperation and consultation with the Secretary of Agriculture of the United States, would be charged with developing and implementing a land use management plan for an area defined as the "scenic area." 16 U.S.C. § 544c(1); 16 U.S.C. § 545d. The Act established a framework within which the management plan was to be developed, implemented, and administered, and divided the scenic area into three kinds of subareas: urban areas, which are not subject to scenic area regulations or the management plan, 16 U.S.C. § 544b(e); "special management areas" (SMAs), which comprise more than 100,000 acres of land within the scenic area that are deemed the most sensitive, 16 U.S.C. § 544(b); and the areas in which the remaining land in the scenic area is located, which are referred to as "general management areas" (GMAs).[1]
*1245 The Act further provided for the adoption, by the six Oregon and Washington counties whose territories lie in part inside the scenic area, of local ordinances implementing the provisions of the management plan. 16 U.S.C. § 544e(b).[2] Under 16 U.S.C. section 544e(b), the commission is required to send copies of the management plan, and any amendments thereto, to each county; in response, each county must, within a specified time, submit ordinances implementing the plan or amendment to the commission for approval.[3] The Act further provides that the commission is required to approve a county's ordinance unless it finds that the county's ordinance is inconsistent[4] with the management plan. 16 U.S.C. § 544e(b)(3).[5]
Pursuant to the directives in the Act, Oregon and Washington established the Columbia River Gorge Commission, which, in 1991, adopted a management plan for the Columbia River Gorge. The Act requires a comprehensive review of the management plan at least every ten years and authorizes the commission to make any necessary revisions, subject to the review and approval of the Secretary of Agriculture. 16 U.S.C. § 544d(g). Accordingly, over the next few years, the commission reviewed whether and in what ways the management plan should be revised, and, in 2004, the commission adopted certain revisions to the plan.[6]
As noted, one purpose of the management plan is to protect the scenic, cultural, recreational, and natural resources of the Columbia River Gorge. This case involves that part of the plan that deals with certain cultural resources  specifically, historic buildings.
The management plan describes cultural resources as "the evidence of past human activity that are important in the history, archaeology, architecture, or culture of a community or region," including "historic buildings and structures." Management Plan, Part I, ch. 2 (Cultural Resources). "Historic buildings and structures," in turn, are defined as "[s]tanding buildings and structures that are at least 50 years old, including log cabins, barns, highways, and wagon trails." Id.[7] The management plan *1246 provides that, if a proposed use of land inside the GMA may affect a cultural resource, then the cultural resource must be evaluated to determine if it is "significant." Among other things, a cultural resource is significant if it is included in or eligible for inclusion in the National Register of Historic Places.[8] If the cultural resource is determined to be significant, then an assessment of the proposed use is required; and, if the proposed use would have an adverse effect on the cultural resource, a "mitigation plan" must be prepared. That mitigation plan must ensure that the proposed use would have no adverse effect on significant cultural resources. Management Plan, Part I, ch. 2 (Cultural Resources), GMA Provisions, GMA Policies 12-14.
The commission did not change that treatment of historic properties when it revised the management plan in 2004. However, in December 2005, the commission adopted and the Secretary of Agriculture approved an amendment to the management plan that, among other things, added certain new provisions dealing specifically with historic buildings. First, the 2005 amendment added the following to the management plan's list of GMA policies in the Cultural Resources chapter:
"20. Provide incentives to protect and enhance historically significant buildings by allowing uses of such buildings that are compatible with their historic character and that provide public appreciation and enjoyment of them as cultural resources."
Management Plan, Part I, ch. 2 (Cultural Resources), GMA Provisions, GMA Policies 20. In addition, it added a new section to the part of the management plan listing General Policies and Guidelines, entitled "Special Uses in Historic Buildings," which expressly permits certain commercial uses of historic buildings. That section provides, in part:
"GMA Guidelines

"Additional Review Uses for Historic Buildings
"1. Properties in all GMA land use designations except Open Space and Agriculture-Special with buildings included on the National Register of Historic Places shall be permitted to be open to the public for viewing, interpretive displays, and an associated gift shop * * *.
"2. Properties in all GMA land use designations except Open Space and Agriculture-Special with buildings included on the National Register of Historic Places, and which were former restaurants and/or inns shall be permitted to re-establish these former uses * * *.
"3. Properties in all GMA land use designations except Open Space and Agriculture-Special with buildings included on the National Register of Historic Places shall be permitted to hold commercial events * * *.
"4. The following additional review uses may be allowed in all GMA land use designations except Open Space and Agriculture-Special on a property with a building either on or eligible for the National Register [of] Historic Places and that was 50 years old or older as of January 1, 2006 * * * [listing ten types of commercial activities]."
*1247 Management Plan, Part II, ch. 7 (General Policies and Guidelines), Special Uses in Historic Buildings, GMA Guidelines, Additional Review Uses for Historic Buildings (emphasis added).
Multnomah County adopted an ordinance implementing the 2005 plan amendment, including the foregoing provisions, among others. The ordinance contains three sections that are identical in all important respects to the wording of the first three "Additional Review Uses for Historic Buildings" set out above. In the fourth, however, Multnomah County changed the wording in one small but crucial way: it omitted the reference to buildings "eligible for" the National Register of Historic Places. That is, the county's ordinance corresponding to the fourth "Additional Review Use" provided, in part:
"The following uses may be allowed as established in each zone on a property with a building included on the National Register of Historic Places and that was 50 years old or older as of January 1, 2006 * * *."
The county submitted the ordinance to the commission for approval[9] and the commission held a hearing on the matter. At that hearing, the county acknowledged that its version of the pertinent provision of the management plan deviated from the management plan in the way described above, but argued that that version would provide greater protection for protected resources than the management plan wording itself. In its view, requiring that a building be listed on the National Register as a prerequisite to permitting the enumerated commercial activities would work as an incentive for the applicant to list the building. Listing the building, in turn, would demonstrate the owner's commitment to preserving the structure. In addition, the tax benefits, grant eligibility, and exposure resulting from listing would provide greater protection of historic buildings than simply permitting the enumerated uses on or in all historically significant buildings, including those merely eligible for listing.
Friends appeared before the commission in support of the county's ordinance. Friends contended that, under the plain wording of the relevant provision of the management plan, the county was fully entitled to limit itself to permitting the commercial activities enumerated in the fourth section of "Additional Review Uses" only to those historic buildings actually on the National Register of Historic Places. Friends noted that the first three "Additional Review Uses" set out in Part II, chapter 7 (General Policies and Guidelines), Special Uses in Historic Buildings, list three types of activities that "shall be permitted" on properties with buildings listed on the National Register of Historic Places. The county's ordinance was required to and does permit those activities. The management plan then lists ten additional types of activities that "may be allowed" on property with a building "either on or eligible for the National Register of Historic Places." According to Friends, the fact that the management plan uses both the words "shall" and "may" is significant: the county is required to permit the activities that are described in the first three sections, but it has discretion whether to permit the activities described in the fourth section. And, Friends reasoned, because the county has discretion whether to allow those activities at all, it a fortiori has the discretion to determine the circumstances under which it will allow those activities, including whether it will permit those activities on properties with buildings that merely are eligible for listing, but not actually listed, on the National Register. It follows, Friends concluded, that the county's ordinance is consistent with the management plan.
In its final order, the commission rejected the county's preferred provision as inconsistent with the management plan. In so holding, the commission stated that, through the *1248 process leading to the adoption of the plan amendment at issue here, it had found that preservation and maintenance of historic buildings is much more expensive than the preservation and maintenance of other buildings. It also had determined that authorizing a greater range of income-generating uses of historically significant buildings, and linking that income to the actual preservation of the buildings through a historic building preservation plan, would result in historically significant buildings paying for their own preservation and maintenance. Moreover, the commission observed, the management plan treats both buildings listed on the National Register of Historic Places and buildings eligible for listing as equally significant cultural resources worthy of protection. However, because it is expensive, time consuming, and complicated to list a building on the National Register and only a small percentage of historically significant buildings in the scenic area presently are listed, to require listing as a prerequisite to permitting the enumerated commercial uses of historic buildings would mean that fewer landowners would choose to engage in those commercial uses. As a result, fewer historic buildings would be preserved and maintained with money generated by those commercial uses. It followed, the commission reasoned, that the county's ordinance permitting the enumerated commercial uses only in (or in connection with) listed buildings would be less protective of cultural resources than would an ordinance permitting those activities on properties with buildings either on the National Register or eligible for listing on the National Register, as the management plan provides.
Briefly addressing Friends' argument concerning the range of discretion conferred by the plan amendment to the counties, the commission concluded with the following statement:
"Given this context, the term `may be allowed' in [the fourth paragraph of "Additional Review Uses for Historic Buildings" set out in the management plan[10]] can not permit the county to add the requirement for listing on the National Register."
Friends pursued review of that final order in the Court of Appeals, arguing that the commission erred in concluding that the county's ordinance was inconsistent with the management plan. In that court, Friends repeated its argument that the plain wording of the management plan permits counties to decide whether commercial activities may be allowed on properties eligible for listing, but not yet listed, on the National Register.[11] Specifically, Friends argued that the county correctly interpreted the phrase "may be allowed" as granting to the county discretionary authority whether to allow the enumerated activities, and that the county properly exercised its discretion when it chose not to allow those activities on properties with buildings that are eligible for listing, but not actually listed, on the National Register of Historic Places.
As noted, the Court of Appeals agreed with the commission that the management plan does not grant the county authority to limit the uses of historic buildings in the way that it proposed to limit those uses in the ordinance. In so doing, the Court of Appeals rejected Friends' argument that the management plan's use of the phrase "shall be permitted" in the first three sections and "may be allowed" in the fourth indicates that the county is required to allow the uses that are described in the first three sections but has discretion whether to allow the uses described in the fourth. According to the Court of Appeals, Friends' argument "is predicated on a false premise  the asserted `diametrically different meanings of "may" and "shall."'" Friends (A133281), 218 Or. App. at 269, 179 P.3d 700. Rather, the court *1249 stated, the two words are not as distinct, and their meanings are not as concrete, as Friends contends. Id. at 269-70, 179 P.3d 700. "Shall," the court noted, can mean "may," and vice versa. Id. at 269, 179 P.3d 700. The court explained that the meaning of either word depends on the context in which the word is used, and here, in context, the court found that the meaning is ambiguous. Id. at 270, 179 P.3d 700. That is, according to the court, the interpretation offered by each side is reasonable. In such a circumstance, the Court of Appeals was unwilling to say that the commission's interpretation of the management plan as not permitting the county's ordinance was wrong. Id.
On review in this court, Friends attacks the Court of Appeals' reasoning that the word "may" in the fourth section is ambiguous, particularly in the context of the use of the word "shall" in the other three sections. Friends argues that those different words, used side by side, must have different meanings, and, in context, it is clear that the use of the word "may" in the fourth section means that the county has discretion whether to allow the enumerated activities on properties with historic buildings. Moreover, Friends argues, the Court of Appeals' interpretation that the county does not have that discretion effectively means that the county must allow the uses enumerated in the fourth section. As we shall explain, we agree with Friends that the Court of Appeals erroneously found that the management plan was ambiguous as to whether it confers discretion on a county to approve certain uses of property, but we nonetheless agree with the Court of Appeals' ultimate conclusion that the commission was entitled to reject the county's ordinance as inconsistent with the management plan.
Assuming for the sake of argument that, in certain contexts, the word "may" can mean "shall" and vice versa, we have no trouble concluding that, in the context of the management plan's "Additional Review Uses for Historic Buildings," those words should be understood according to their common and ordinary meanings. That is so because, whatever the possibility for confusion or ambiguity that might exist when either word appears alone in a statute, regulation, or other directive, when both words appear side by side in the same section of a document, our normal interpretive principles dictate that we presume that different meanings are intended. See, e.g., Atkinson v. Board of Parole, 341 Or. 382, 388, 143 P.3d 538 (2006) ("when the legislature uses different terms within the same statute, normally it intends those terms to have different meanings"); Scott v. State Farm Mutual Auto. Ins., 345 Or. 146, 155, 190 P.3d 372 (2008) (in uninsured motorist legislation, the legislature's use of two different terms to describe certain submissions by the insured indicates that it intended a different meaning for each).
As this court has stated in the statutory context, in ordinary usage, "`shall' create[s] a mandatory duty, while `may' creates only authority to act." Cain v. Rijken, 300 Or. 706, 718, 717 P.2d 140 (1986); see also Pendleton School Dist. v. State of Oregon, 345 Or. 596, 607, 200 P.3d 133 (2009) (although "shall" can carry different meanings, context showed legislature intended to use word as a directive or a command that states a requirement). Thus, Friends is correct that the management plan unambiguously requires the counties[12] to permit the uses described in the first three sections of the "Additional Review Uses for Historic Buildings," but also unambiguously makes the counties' authority to allow the uses in the *1250 fourth section a discretionary one. That is, a county "may" approve an applicant's request to engage in one or more of the activities enumerated in the fourth section, but it also has discretion not to approve the request.
That conclusion addresses only half of the problem, however. We must consider how far the county's discretionary authority to approve certain uses of properties extends, as well as how it intersects with the commission's authority to approve local ordinances. Both the Act and the management plan make it clear that the county's authority to implement the management plan through its local ordinance is subordinate to the commission's determination whether a particular feature of the ordinance is inconsistent with the management plan. As described above, the Act requires the Commission to approve a county's ordinance "unless it determines the ordinance is inconsistent with the management plan." 16 U.S.C. § 544e(b)(3)(A). And the management plan, in turn, sets out a standard for the commission's determination of when an ordinance is "consistent" with the management plan so that its approval is required. It provides that a county ordinance may vary from the terms of the management plan as long as the ordinance offers greater protection of scenic, cultural, natural, and recreation resources than the plan does:
"Counties may adopt ordinances with provisions that vary from the policies and guidelines in the Management Plan as long as the ordinances provide greater protection for the scenic, cultural, natural, and recreation resources of the Scenic Area. Notwithstanding the designation policies in Part II of the Management Plan, the Gorge Commission shall, upon request from a local government, apply a more restrictive designation."
Management Plan, Part IV, ch. 1 (Gorge Commission Role), County Ordinances, Policies 1. It follows, then, that, even though the management plan gives counties a species of discretion to approve or disapprove certain uses of historic buildings, the commission retains the authority to review a county's ordinance implementing the management plan, including a county's description in an ordinance of the way in which it will exercise its discretionary authority under the management plan, to determine whether the ordinance "varies" from the management plan, and, if it does, whether the ordinance would be less protective of resources and therefore inconsistent with the management plan.
In its final order, the commission concluded, first, that the county's proposed ordinance "varies" from the management plan, insofar as the management plan gives the county discretionary authority to permit certain uses of buildings that are either on or eligible for the National Register of Historic Places, but the county's proposed ordinance would limit its exercise of that discretionary authority to those buildings that are listed on the National Register. Then, in accordance with the management plan's county ordinance policies, the Commission turned to consider whether the part of the county's ordinance addressing its discretionary authority would provide greater protection of resources than the plan's corresponding provision. As discussed above, the Commission concluded that it did not and rejected the ordinance.
Our review of the commission's orders is governed by ORS 196.115. That statute provides, among other things, that the court's review "shall be in accordance with" various provisions of the Oregon Administrative Procedures Act (APA) pertaining to judicial review of orders in contested cases. ORS 196.115(3)(a). At the same time, ORS 196.115 essentially repeats certain provisions of the APA, spelling out a standard of review that is almost identical to the one that Oregon courts are required to apply to orders in contested cases. As relevant here, ORS 196.115(3) provides:
"(c) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall * * * [follow one of various courses of action].
"(d) The court shall remand the order to the agency if the court finds the agency's exercise of discretion to be:

*1251 "(A) Outside the range of discretion delegated to the agency by law;
"(B) Inconsistent with an agency rule, an officially stated agency position or a prior agency practice, unless the inconsistency is explained by the agency; or
"(C) Otherwise in violation of a constitutional or statutory provision.
"(e) The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the whole record."
In this case, Friends' argument boils down to a contention that the Commission erred in concluding that the management plan does not give counties discretion to limit the exercise of their authority to permit certain new commercial uses of historic buildings to those buildings that are listed on the National Register. According to Friends, the management plan does give the counties that discretion, and, therefore, Multnomah County's ordinance is not inconsistent with the management plan and the commission should have approved it. We review the commission's order in this connection to determine whether the commission has "erroneously interpreted a provision of law." ORS 196.115(3)(c). In this case, the "provision of law"  the management plan  is akin to an agency rule that the agency has itself made.[13] Ordinarily, in such cases, we defer to the commission's interpretation of its own rule, unless no reasonable reading of the rule will sustain that interpretation.[14]
The first sentence of the fourth section of the historic buildings provision in the management plan, "Additional Review Uses for Historic Buildings," states that "[t]he following additional review uses may be allowed * * * on a property with a building either on or eligible for the National Register [of] Historic Places * * *." As we have observed, that provision confers some measure of discretionary authority, and, notwithstanding the plan's use of the passive voice, it is clear that the counties are the entities that are to exercise that discretion. 346 Or. at 427 n. 12, 212 P.3d at 1249 n. 12. The dispute, at this point, concerns how far the counties' discretion extends. As we parse the sentence, we see that the counties have discretion whether to "allow" various enumerated "additional review uses" on certain properties with historic buildings. The sentence then goes on to describe the properties that are entitled to receive that discretionary consideration: those with a building either on or eligible for the National Register of Historic Places. The commission concluded that that part of the sentence is mandatory and we agree. That is, the provision gives the counties discretion whether to allow various uses, but it requires the counties to give that discretionary consideration on an individualized basis to properties with buildings both on and eligible for listing on the National Register. It does not give the counties the discretion to exclude "eligible" properties from any discretionary consideration, as the county's preferred version if its ordinance would do.
It follows from the foregoing that the commission correctly concluded that the ordinance *1252 "varies" from the management plan. The commission next considered whether the ordinance provides greater protection of resources than the management plan does. As noted, the commission determined that the county's ordinance, which effectively denies case-by-case consideration of whether to allow the additional uses for all properties with buildings that are eligible for listing on the National Register, is less protective of resources, for the reasons outlined in its final order and summarized above. This court reviews a determination like that made by the commission for abuse of discretion.[15] Friends, however, does not argue that that determination was an abuse of the commission's discretion.[16] Rather, Friends' only argument before this court is that the discretion conferred on the county by the "Additional Review Uses" section of the management plan expressly and necessarily includes the right to craft its ordinance in the way that it did. Because we have rejected that argument, this dispute is at an end.
The Court of Appeals observed that the question whether the county's ordinance is more or less protective of resources merely reflects a policy disagreement over the best ways to protect the scenic area. Friends (A133281), 218 Or.App. at 271, 179 P.3d 700. So it appears. We hold that the commission did not abuse its discretion in rejecting the county's proposed ordinance.
The decision of the Court of Appeals and the order of the Columbia River Gorge Commission are affirmed.
NOTES
[1] The phrase "general management area" is not defined in the Act, but the commission uses that phrase throughout the management plan to refer to the remaining land in the scenic area. In addition, the statute that the Oregon legislature enacted to implement the Act, ORS chapter 196, defines the phrase to mean "the area within the scenic area that is not an urban area or special management area." ORS 196.105(2).
[2] The Act encouraged the counties to comply with that provision by conditioning their receipt of certain economic development grants on the adoption of land use ordinances consistent with the management plan. 16 U.S.C. § 544i(c)(1).
[3] In the event that a county does not submit an ordinance to the commission for approval, the Act requires the commission to make and publish a land use ordinance setting the standard for compliance with the management plan for land covered by the management plan within the county's borders. 16 U.S.C. § 544e(c). To date, only Klickitat County in Washington State has chosen not to adopt a scenic area ordinance.
[4] As we shall discuss later in this opinion, the management plan itself provides a standard for determining when an ordinance is "consistent" with the Management Plan so that approval is required.
[5] 16 U.S.C. § 544e(b)(3) provides:

"(A) Within ninety days after receipt of a land use ordinance, the Commission, by majority vote including at least three members from each State, shall approve the ordinance unless it determines the ordinance is inconsistent with the management plan. Should the Commission fail to act within ninety days, the ordinance shall be deemed to be approved.
"(B) If approval is denied, the Commission shall state the reasons for finding the ordinance is inconsistent with the management plan, and shall submit to the county suggested modifications to the ordinance to make it consistent with the management plan. * * *."
[6] The Act also permits the commission to amend the management plan "at any time that conditions within the scenic area have significantly changed." 16 U.S.C. § 544d (h). Under that grant of authority, the commission also has amended the management plan a number of times, and, as will be discussed in detail below, this case concerns certain amendments to the management plan dealing with cultural resources.

At this point, we think it is important to note that, in this opinion, when we refer to the "management plan," we are not referring to a particular paper document, but to the entire body of law that comprises the management plan, including revisions and amendments that currently are in effect. An up-to-date version of the management plan is available online at http://www.gorge commission.org. In this opinion, when we cite provisions in the management plan, we make an effort to give sufficient information to permit the reader to find the provisions we discuss, but we do not attempt to refer to a particular document, online or on paper, or to any page numbers therein.
[7] The management plan's glossary contains more complete definitions of the phrases "cultural resources" and "historical buildings and structures."
[8] Management Plan, Part I, chapter 2 (Cultural Resources), GMA Provisions, GMA Policies, provides:

"10. If cultural resources may be affected by a proposed use, an evaluation shall be performed to determine if they are significant. Cultural resources are significant if one of the following criteria is satisfied:
"A. The cultural resources are included in, or eligible for inclusion in, the National Register of Historic Places.
"The criteria for evaluating the eligibility of cultural resources for the National Register of Historic Places appear in the `National Register Criteria for Evaluation' (36 C.F.R. 60.4). Cultural resources are eligible for the National Register of Historic Places if they possess integrity of location, design, setting, materials, workmanship, feeling, and association. In addition, they must meet one or more of the following criteria:
"(1) Have an association with events that have made a significant contribution to the broad patterns of the history of this region.
"(2) Have an association with the lives of persons significant in the past.
"(3) Embody the distinctive characteristics of a type, period, or method of construction, or represent the work of a master, or possess high artistic values, or represent a significant and distinguishable entity whose components may lack individual distinction.
"(4) Yield, or may be likely to yield, information important in prehistory or history."
[9] The county contemporaneously offered a second version of the ordinance to the commission, which precisely mirrored the wording in the management plan and did not omit the reference to buildings "eligible for" listing on the National Register of Historic Places in the fourth section. The county stated that it wished the commission to consider and approve that second version in the event that it decided to reject the county's preferred wording. As discussed below, the commission did reject the county's preferred wording. The commission then approved the alternative wording.
[10] In the final order, the commission actually refers to Section 38.7380(C) of the county's ordinance, rather than to the pertinent provision of the management plan. That clearly was a misstatement, which we assume, in this context, was inadvertent. We therefore have placed in brackets what we understand the commission to have meant.
[11] In its brief to the Court of Appeals, Friends also argued that the county's approach better protects sensitive resources. Friends has abandoned that argument in this court and we do not discuss it further.
[12] In this connection, we also reject the Court of Appeals' view that the use of the words "may" and "shall" are ambiguous in context because the management plan uses the passive voice for the operative wording for the "Additional Review Uses." Friends (A133281), 218 Or.App. at 270, 179 P.3d 700 ("Allowed by whom? The county? The commission?"). Although the management plan provides that certain uses "shall be permitted" and others "may be allowed," the meaning of those phrases is not ambiguous. The Act and the management plan make clear that the entity responsible for implementing the management plan, including deciding whether to allow or permit uses of properties in the GMA, is the local permitting authority. Furthermore, the Act and the management plan explain who the local permitting authority is  either the county, if it has adopted an ordinance that was approved by the commission and the Secretary of Agriculture, or the commission itself, if the county has not done so.
[13] In Friends (S055722), decided this date, we explained that

"the management plan, both in its original and its revised form, is much like a `rule' as that term is defined in the Oregon APA: i.e., it is `any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency.' ORS 183.310(9). Moreover, the plan was adopted and revised by the commission through a process that is similar to the rulemaking process prescribed in the Oregon APA at ORS 183.335."
346 Or. at 376, 212 P.3d 1248.
[14] As we observed in Friends (S055722), federal courts have held that a federal agency's construction of its own regulation is controlling unless it is "plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Oregon courts are similarly deferential to Oregon agencies' interpretations of their own rules. See Don't Waste Oregon Com. v. Energy Facility Siting, 320 Or. 132, 142, 881 P.2d 119 (1994) (court's will defer to agency's interpretation of its own rule if the interpretation is plausible and not inconsistent with the rule, the rule's context, or any other source of law). Friends (S055722), 346 Or. at 410, ___ P.3d ___, 2009 WL 2046485 For those reasons, we conclude that the commission's interpretation of its "rules"  the management plan  also is entitled to deference.
[15] See ORS 196.115(3)(a) (review of commission orders shall be in accordance with the Oregon Administrative Procedures Act); ORS 196.115(3)(d) (court shall remand the case to the commission if court finds commission's exercise of discretion to be outside the range of discretion delegated to the commission by law, inconsistent with a rule, officially stated position or a prior practice, or otherwise in violation of a constitutional or statutory provision); ORS 183.482(8)(b) (to same effect).
[16] As noted, Friends abandoned its argument that the county's preferred ordinance actually was more protective of resources.