Argued and submitted December 6, 2007, affirmed February 27, petition for review allowed July 2, 2008 (345 Or 94)

# FRIENDS OF THE COLUMBIA GORGE, INC.,
Collyn Baldwin, Claudia Curran,
Beverly Klock, Clair Klock, Eric Lichtenthaler,
Phil Pizanelli, Dixie Stevens,
Kimberlee Thorsell, Peter Thorsell,
Brian Winter and Cynthia Winter,
*Petitioners,*

*v.*

# COLUMBIA RIVER GORGE COMMISSION,
*Respondent.*

Columbia River Gorge Commission
OA0601; A133281

179 P3d 700

Gary K. Kahn argued the cause for petitioners. With him on the briefs was Reeves, Kahn & Hennessy.

Jeffrey B. Litwak argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

The Columbia River Gorge Commission adopted an amendment to the management plan for the Columbia River Gorge National Scenic Area. The amendment increased the range of permissible uses of historic properties in the Scenic Area to create economic incentives for the rehabilitation and maintenance of those properties. It applies to all properties that are either listed or eligible for listing on the National Register of Historic Places. Multnomah County adopted an ordinance intended to implement the plan amendment. The county ordinance, however, applies only to properties that are actually listed on the National Register. The commission rejected the county's ordinance because it concluded that the ordinance did not adequately protect the cultural resources of the Scenic Area, which include historic properties. Petitioners, a conservation organization and a number of Scenic Area residents, seek judicial review of that decision, arguing that the county's ordinance better complies with the requirements of federal law. We affirm.

We begin by setting forth the relevant provisions of the applicable federal law, the Columbia River Gorge National Scenic Area Act, 16 USC §§ 544-544p. The Act directs the Columbia River Gorge Commission, a regional agency established by the Act, to adopt a management plan for the Scenic Area to implement the standards and purposes of the Act. 16 USC § 544d(c), (d). The purposes of the Act are two-fold:

"(1)  to establish a national scenic area to protect and provide for the enhancement of the scenic, cultural, recreational, and natural resources of the Columbia River Gorge; and

"(2)  to protect and support the economy of the Columbia River Gorge area by encouraging growth to occur in existing urban areas and by allowing future economic development in a manner that is consistent with paragraph (1)."

16 USC § 544a. As part of its charge to implement the Act, the commission is required to

"designate areas in the scenic area outside special management areas used or suitable for commercial development:

*Provided*, That such designation shall encourage, but not require, commercial development to take place in urban areas and shall take into account the physical characteristics of the areas in question and their geographic proximity to transportation, commercial, and industrial facilities and other amenities[.]"

16 USC § 544d(b)(5). The management plan must also include a provision to "require that commercial development outside urban areas take place without adversely affecting the scenic, cultural, recreation, or natural resources of the scenic area." 16 USC § 544d(d)(7). "Adversely affecting" is defined as "a reasonable likelihood of more than moderate adverse consequences" for the protected Scenic Area resources. 16 USC § 544(a). Adverse effects are also defined within the context and intensity of a proposed action, the relationship between a proposed action and other similar actions that are individually insignificant but that may have cumulatively significant impacts, and the mitigation measures that will be implemented as part of a proposed action. 16 USC § 544(a).

Under the Act, the six Scenic Area counties receive incentives to adopt local ordinances that implement the provisions of the management plan. *See* 16 USC § 544i(c)(4) (providing as a condition of making economic development grants that the county have in effect consistent land use ordinances). 16 USC § 544e(b)(1) provides, in part:

"Within sixty days of initial receipt of the management plan, each county shall submit to the Commission a letter stating that it proposes to adopt a land use ordinance consistent with the management plan."

The Act requires the commission to approve the counties' local ordinances unless the commission determines that they are inconsistent with the management plan or the Act. 16 USC § 544e(b)(3)(A).

The Act provides for judicial review of commission decisions and actions. Among other things, it provides that the state courts of the states of Oregon and Washington have jurisdiction to review any final order or action of the commission relating to the implementation of the Act. 16 USC § 544m(b)(6)(C).

With that statutory framework in mind, we turn to the facts giving rise to the dispute in this case. The commission adopted a management plan for the Scenic Area in 1991, and, after a three-year "plan review," adopted a revised management plan in 2004. Several provisions of the management plan are relevant to the issue in this case. The management plan permits a county to adopt ordinances that "vary from the policies and guidelines in the Management Plan as long as the ordinances provide greater protection for the scenic, cultural, natural, and recreation resources of the Scenic Area" than the management plan itself provides. Although one of the protected resources under the Act, the Act does not define the term "cultural resources." However, in the management plan, the commission defines a "cultural resource" as "[e]vidence of human occupation or activity that is important in the history, architecture, archaeology or culture of a community or region * * * includ[ing] * * * [h]istoric buildings and structures * * * that are at least 50 years old." The management plan also provides that significant cultural resources are those that are, among other things, "included in, or eligible for inclusion in, the National Register of Historic Places."

On December 13, 2005, the commission approved an amendment to the management plan that authorized a wider range of uses of historic properties than were previously allowed. The portion of the plan amendment relating to adaptive uses provides, in part:

"1. Properties in all GMA [general management area] land use designations except Open Space and Agriculture-Special with buildings included on the National Register of Historic Places *shall be permitted* to be open for public viewing, interpretive displays, and an associated gift shop * * *.

"2. Properties in all GMA land use designations except Open Space and Agriculture-Special with buildings included on the National Register of Historic Places, and which were former restaurants and/or inns *shall be permitted* to re-establish these former uses * * *.

"3. Properties in all GMA land use designations except Open Space and Agriculture-Special with buildings included on the National Register of Historic Places *shall be permitted* to hold commercial events * * *.

"4.   The following additional review uses *may be allowed* in all GMA land use designations except Open Space and Agriculture-Special on a property with a building *either on or eligible for the National Register for Historic Places* and that was 50 years old or older as of January 1, 2006 * * *.[1]

"* * * * *

"5.   For the purposes of the guidelines in this section, the term 'historic buildings' refers to buildings either on or eligible for the National Register of Historic Places. * * *"

(Emphases added.)

As required by the Act for a plan amendment to take effect, the Secretary of Agriculture concurred on January 23, 2006. Four days later, the commission transmitted the plan amendment to the six Scenic Area counties, including Multnomah County. On May 4, 2006, after a series of public workshops, a work session, and public hearings, the county adopted an ordinance that mirrors the first three sections of the commission's plan amendment.

However, in a departure from the fourth section of the plan amendment, the county's ordinance provides, in part:

"The following uses may be allowed as established in each zone on a property with a building *included on the National Register of Historic Places* and that was 50 years old or older as of January 1, 2006 * * *."

(Emphasis added.) The ordinance also provides "replacement" wording, mirroring section four of the plan amendment, to take effect immediately in the event that the commission rejected its "preferred" wording.

On June 28, 2006, the commission rejected the county's ordinance on the ground that it is inconsistent with the management plan. In its final order, the commission explained that, although a county ordinance may deviate from the provisions in the management plan to provide greater protection of Scenic Area resources, in this case, the county's ordinance provides less protection. The commission

---

[1] For ease of subsequent reference to those provisions in this opinion, we refer to them as sections one through four of the plan amendment.

reasoned that, because the ordinance limits one of its provisions to historic properties listed on the National Register, and excludes historic properties that are merely list-eligible, it is less protective than the newly amended management plan with regard to cultural resources—in particular, historic properties.

In rejecting the county's "preferred" wording, the commission acknowledged that, ordinarily, an ordinance that further restricts uses would be more protective of protected resources. However, the commission noted, "development of historically significant buildings with adaptive uses that generate income * * * provides greater protection of the buildings than just limiting the range of land uses." After rejecting the county's preferred wording, it approved the county's replacement wording as consistent with the management plan.

■ On judicial review of that decision, petitioners contend that the commission erred in rejecting the county's preferred wording relating to uses that "may be allowed." They advance two arguments in support of that contention. First, they argue that the commission erroneously construed its own management plan. According to petitioners, the plan amendment plainly provides that Multnomah County has the discretion to decide whether to permit certain uses authorized by the plan; specifically, they argue, it authorizes the county to determine whether to allow commercial uses only on properties that are listed on the National Register. Second, petitioners argue that the commission erred in concluding that Multnomah County's ordinance was not as protective as the plan amendment itself.

We begin with petitioners' first argument, which involves the question whether the commission erroneously interpreted its own management plan. Petitioners do not appear to contest that the commission generally is entitled to deference in evaluating its interpretation of its own plan. *See Auer v. Robbins*, 519 US 452, 461, 117 S Ct 905, 137 L Ed 2d 79 (1997) (federal agency construction of agency's own rule is entitled to deference); *see also Martin v. OSHRC*, 499 US 144, 150, 111 S Ct 1171, 113 L Ed 2d 117 (1991) ("It is well established that an agency's construction of its own regulations is

entitled to substantial deference." (Internal quotation marks omitted.)); *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (under Oregon law, agency construction of its own rule is entitled to deference). Their argument is that no such deference is warranted in this case because the text of the plan amendment is "clear and unambiguous" and reasonably capable of only one construction.

Petitioners contend that the plan amendment begins by setting out three categories of uses that "shall be permitted," followed by a declaration that certain additional uses "may be allowed." Among the uses that "may be allowed," petitioners note, are the uses that are the subject of the Multnomah County ordinance—that is, commercial uses of buildings that are listed on the National Register or are eligible for listing. According to petitioners, the fact that section four of the plan amendment is phrased in the permissive— employing the word "may"—is dispositive. It means, they contend, that the plan amendment plainly confers on the county the discretion to determine whether to allow commercial uses of *either* properties that are listed *or* those that are eligible for listing, or both.

The commission takes issue with petitioners' reading of the plan amendment. According to the commission, the phrase "may be allowed" is ambiguous, at best, in that it is phrased in the passive voice and does not make clear precisely *who* may do the allowing—the commission or the county. In that respect, the commission contends, this case is remarkably similar to *Brentmar v. Jackson County*, 321 Or 481, 487, 496, 900 P2d 1030 (1995), a case in which the Supreme Court interpreted a statute that listed certain land uses that "may be established" in areas zoned for exclusive farm use not to permit counties to enact local land use ordinances more restrictive than state law allowed. The commission notes that the court concluded in *Brentmar* that the passive phrasing of the statute rendered it ambiguous, necessitating resort to legislative history and other aids to construction. In this case, the commission argues, because of the ambiguity in the plan amendment, we are required to defer to its construction as long as it is reasonable.

We agree with the commission. We begin by observing that petitioners' argument is predicated on a false premise—the asserted "diametrically different meanings of 'may' and 'shall.'" Of course, petitioners are correct that "may" and "shall" *can* connote different things. *Compare Webster's Third New Int'l Dictionary* 1396 (unabridged ed 2002) (defining "may" as, among other things, "have the ability or competence * * * to have permission to"), *with id.* at 2085 (defining "shall" as, among other things, "will have to : must" (capitalization omitted)).

But it has long been recognized that the two terms, particularly as used in statutes, are not so distinct as their abstract definitions might otherwise suggest. The late Professor David Mellinkoff, for example, noted that

> "[t]he standard grammatical use of *may* (permitted) and *shall* (required) is also a legal use, often described as the 'presumed' use. But *may* and *shall* in legal writing, especially in statutes, are so frequently treated as synonyms that the grammatical standard cannot be considered the legal standard. Context and interpretation so easily overwhelm either word."

David Mellinkoff, *Mellinkoff's Dictionary of American Legal Usage* 402-03 (1992) (emphases in original). Bryan Garner similarly has observed that the use of the words "may" and "shall" is "a horrific muddle." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 939 (2d ed 1995). As Garner explains, the word "shall" is especially "slippery," being subject to at least eight different senses and sometimes shifting meaning in mid-sentence:

> "How can *shall* be so slippery, one may ask, when every lawyer knows that it denotes a mandatory action? Well, perhaps every lawyer has heard that it's mandatory, but very few consistently use it in that way. And, as a result, courts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice-versa."

*Id.* (emphases in original); *see also* ORS 174.100(4) ("may not" and "shall not" are "equivalent expressions of an absolute prohibition").

The point is that the meanings of the words are not as concrete and immutable as petitioners suggest. Rather,

their meanings depend on the manner in which they are employed in context. In this case, as the commission points out, the intended meaning of the phrasing is anything but clear. That is especially so because of the passive phrasing of the operative language of the plan amendment, which states that "[t]he following additional review uses *may be allowed*" in certain general management area land use designations. (Emphasis added.) Allowed by whom? The county? The commission?

As the commission correctly observes, in that regard, this case is similar to *Brentmar*. In that case, the statutes— ORS 215.213(1) and (2) and ORS 215.283(1) and (2)—provided, in part, that certain land uses "may be established" in an exclusive farm use zone. A developer argued that the phrasing of the statute granted permission to individual landowners to establish any of the listed uses, while the county argued that the statute permitted local governments to enact criteria that are more restrictive than the uses listed in the statute. *Brentmar*, 321 Or at 487. For our purposes, it does not matter how the court resolved that dispute. What matters is that the court concluded—readily—that the phrasing was ambiguous. *Id.* ("The operative wording of the statutes is ambiguous.").

The same is true in this case. Petitioners' only argument to the contrary is that the commission's proposed reading of the plan amendment is foreclosed by the "plain" meaning of the words "may" and "shall." But, as we have noted, that argument simply is not tenable.

Given that the plan amendment is ambiguous, and given that petitioners have identified no other way in which the commission's interpretation of the plan amendment is contrary to its wording or to any other source of law, we must reject petitioners' argument that the commission's rejection of the county's ordinance was contrary to the plan amendment.

■ We turn, then, to petitioners' alternative argument, that the county's more limited approach to uses of historic properties is more protective of Scenic Area resources than the plan amendment. As we have noted, the Act permits counties to adopt land use ordinances that are "consistent

with" the requirements of the commission's management plan. The commission has interpreted that requirement to mean that a county's ordinances must be at least as protective of the scenic, cultural, natural, and recreational resources of the Scenic Area. No one appears to take issue with that interpretation. The dispute centers on whether, in this case, the commission was correct in determining that, by restricting the types of historic properties that may engage in commercial uses, the county's ordinance was less protective of those Scenic Area resources.

Petitioners, on the one hand, argue that, by restricting commercial uses in the Scenic Area, the county's ordinance obviously provides greater protection for Scenic Area resources. The commission responds that the county's ordinance plainly would limit adaptive uses of historic properties and thus threaten the protection of the cultural resources that the Act requires it to protect. According to the commission, petitioners simply assume that protecting scenic and other resources of the Scenic Area is more important than protecting cultural resources such as historic properties, a priority that the Act simply does not establish. The commission insists that it has fairly weighed the different approaches to protecting *all* the resources that are subject to protection under the Act, and the fact that petitioners or the county would weigh those approaches differently does not mean that the commission violated the law.

We again agree with the commission. Petitioners' argument indeed amounts to little more than a policy disagreement over how the commission evaluated the best ways to protect the resources of the Scenic Area. Petitioners' own brief characterizes the dispute as a "policy difference about how best to create incentives for the protection and enhancement of historic buildings" and that "the counties are in a better position to evaluate the impacts created by commercial development." It is not clear to us precisely on what legal basis petitioners would have us resolve that policy dispute and side with the county against the commission in this case.

Petitioners appear to assume that the Act permits us to substitute our judgment for that of the commission in evaluating whether the county's ordinance better protects Scenic

Area resources. They cite no authority for that assumption, however. To the extent that the commission's evaluation of the issue is a legal one, involving the interpretation and application of the Act, we conclude that the Act provides no clear answer and that the commission's interpretation and application of it is reasonable and entitled to deference under *Chevron U. S. A. v. Natural Res. Def. Council*, 467 US 837, 104 S Ct 2778, 81 L Ed 2d 694 (1984). To the extent that the commission's evaluation of the issue is an exercise of discretion, petitioners have failed to identify how the evaluation represents an abuse of that discretion. And, to the extent that the commission's evaluation is, at bottom, a finding of fact, petitioners again have failed to explain how the decision lacks the necessary substantial evidence to support it on judicial review. In short, petitioners have not provided a legal basis for their contention that the commission erred in rejecting the county's ordinance.

Affirmed.