Argued and submitted April 8, affirmed June 19, 2013

FRIENDS OF THE COLUMBIA GORGE, INC.,
*Petitioner,*
*v.*
COLUMBIA RIVER GORGE COMMISSION,
*Respondent.*

Columbia River Gorge Commission
A150010

305 P3d 156

Gary K. Kahn argued the cause for petitioner. With him on the briefs were Reeves, Kahn, Hennessy & Elkins, and Nathan J. Baker and Friends of the Columbia Gorge.

Jeffrey B. Litwak argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

The management plan for the Columbia River Gorge National Scenic Area requires Oregon and Washington to develop "a regional air quality strategy" for the scenic area, which must be submitted to the Columbia River Gorge Commission (commission) for approval. In 2011, the states, pursuant to that obligation, submitted the *Columbia River Gorge Air Study and Strategy*, which the commission approved as the states' regional air quality strategy. Petitioner now seeks judicial review of the commission's decision to approve that air quality strategy. We affirm.

By way of brief introduction, Congress in 1986 passed the Columbia River Gorge National Scenic Area Act (the Scenic Area Act), Pub L 99-663, §§ 2-18, 100 Stat 4274 (1986), now codified at 16 USC §§ 544-544p. The Scenic Area Act created the Columbia River Gorge National Scenic Area, which encompasses roughly 292,000 acres along the Columbia River in Oregon and Washington. As authorized by the Scenic Area Act, Oregon and Washington entered into an interstate compact and created the Columbia River Gorge Commission, which, in cooperation and consultation with the United States Secretary of Agriculture, is charged with developing, implementing, and administering a management plan for the scenic area. 16 USC §§ 544c, 544d; ORS 196.150; RCW 43.97.015.

As relevant to this case, the commission amended the existing management plan in May 2000 to include the following:

"Air quality shall be protected and enhanced, consistent with the purposes of the Scenic Area Act. The States of Oregon and Washington and the U.S. Forest Service shall:

"(1) Continue to monitor air pollution and visibility levels in the Gorge;

"(2) Conduct an analysis of monitoring and emissions data to identify all sources, both inside and outside the Scenic Area, that significantly contribute to air pollution. *Based on this analysis, the States shall develop and implement a regional air quality strategy to carry out the purposes of the Scenic Area Act, with the U.S. Forest Service, the Southwest Air Pollution Control Authority and in consultation with affected stakeholders.*

"The States and the Forest Service shall together pro-
vide annual reports to the Commission on progress made
regarding implementation of this policy. The first report
shall include a workplan and timeline for gathering/ana-
lyzing data and developing and implementing the strat-
egy. *The workplan and strategy shall be submitted to the
Commission for approval.*"

(Emphases added.)

Pursuant to the amended management plan, Oregon's
and Washington's air quality agencies (collectively, the "air
agencies"),[1] issued an air quality workplan in 2001. The
workplan anticipated that a regional air quality strategy
would be developed and ready for implementation by 2006, a
date that was eventually pushed back.

On September 13, 2011, the air agencies presented
the *Columbia River Gorge Air Study and Strategy* to the
commission. In that document, the air agencies recom-
mended that the commission approve a "key strategy of
using requirements of the federal Regional Haze Program
as the vehicle and framework for improving visibility in the
Gorge." The Regional Haze Program was created in 1999
by the Environmental Protection Agency (EPA) to improve
visibility in designated national parks and wilderness areas
(known as "Class I areas"). Under the program, states are
required to develop and update regional haze plans every
five years to assure reasonable progress toward meeting
national goals concerning visibility impairment in Class I
areas.

Although the Gorge itself is not a Class I area, the
air agencies noted in the strategy that "it is closely located
between two Class I areas, Mt. Hood and Mt. Adams, and
will benefit from Oregon and Washington's Regional Haze
Programs." The air agencies explained that "the sources
contributing to haze in the Gorge are the same sources that
contribute to haze across the entire Northwest," and that
"tying visibility improvement in the Gorge to the Regional

---

[1] Initially, three air agencies were involved: Oregon's Department of Environ-
mental Quality (DEQ) and Washington's Department of Ecology and its South-
west Clean Air Agency (SWCAA), formerly known as the Southwest Air Pollution
Control Authority. Later, only DEQ and SWCAA were involved in developing the
regional air quality strategy.

Haze Program provides an on-going regulatory framework for haze reduction and checkpoints for the Gorge strategy through a coordinated visibility improvement effort across multiple states." Thus, the air agencies "recommend[ed] specifically tracking Gorge air quality each time the Regional Haze Plan is updated to ensure that the regional strategies continue to benefit air quality in the Scenic Area." The commission voted to approve the recommended strategy.

On judicial review, petitioner urges us to remand the commission's decision approving the regional air quality strategy. Petitioner presses two overarching themes: First, the *Columbia River Gorge Air Study and Strategy* is a "strategy" in name only and does not possess any of the necessary features of a true strategy, such as substantive goals, prescriptive criteria, binding measures, or incentive programs. In fact, petitioner argues, the strategy is little more than a summary of the preexisting Regional Haze Program, which was not designed for the Gorge. Second, petitioner argues that, even assuming that the document could be characterized as a "strategy," it nonetheless fails to carry out the essential requirements of the management plan and the Scenic Area Act—*i.e.*, it neither protects nor provides for the enhancement of air quality or the scenic, natural, cultural, and recreational resources of the Gorge. Consequently, petitioner maintains, the commission's decision in this case is inconsistent with the management plan and violates the Scenic Area Act. *See* ORS 196.115(3)(d) (the reviewing court shall remand when the commission's exercise of discretion is "(B) [i]nconsistent with an agency rule, an officially stated agency position or a prior agency practice, unless the inconsistency is explained by the agency,"[2] or "(C) [o]therwise in violation of a * * * statutory provision").

In response, the commission argues that it properly exercised its discretion to approve the *Columbia River Gorge Air Study and Strategy,* and that nothing in the management plan or the Scenic Area Act requires that the regional

---

[2] *See Friends of Columbia Gorge v. Columbia River (S055916)*, 346 Or 433, 444, 23 P3d 1191 (2009) (stating that "the management plan, both in its original and its revised (and, in this case, amended) form, is much like a 'rule' as that term is defined in the Oregon APA").

air quality strategy include regulatory provisions, rule proposals, or any of the other items that petitioner says are necessary. In the commission's view, the mere fact that petitioner wants a *different* strategy is not a basis for remanding the decision. We agree with the commission.

As an initial matter, we have little difficulty concluding that the *Columbia River Gorge Air Study and Strategy* is a "strategy" within the meaning of the management plan—albeit not the strategy petitioner would have chosen. As set forth above, the management plan requires the air agencies to develop a "regional air quality strategy to carry out the purposes of the Scenic Area Act." Because "strategy" is not defined in the management plan or in the Scenic Area Act itself, petitioner looks to the pertinent dictionary definition of strategy: "a careful plan or method," *Webster's Third New Int'l Dictionary* 2256 (unabridged ed 2002). "Plan" and "method," petitioner asserts, are "defined, respectively, as 'a detailed and systematic formulation of a large-scale campaign or program of action' and 'a procedure or process for attaining an object.'" (quoting *Webster's* at 1422, 1729-30). From those definitions, as well as examples from other parts of the management plan, petitioner argues that "a strategy in this context means affirmative measures or actions designed to reduce pollution and thereby restore the functions of good air quality in the Scenic Area."

The commission agrees (as do we) that, up to that point in the argument, petitioner offers "a fine definition of strategy." The problem, though, is that petitioner proceeds to load that definition with additional freight. Petitioner argues that an air quality strategy must do more than rely on a preexisting framework like the Regional Haze Program, and that the strategy must contain concrete targets, such as timelines, benchmarks, binding criteria, or incentive programs to ensure the protection and enhancement of air quality in the scenic area. Simply put, those requirements do not appear, explicitly or implicitly, anywhere in the management plan or the Scenic Area Act.

Moreover, contrary to petitioner's argument, the *Columbia River Gorge Air Study and Strategy* includes a goal and a plan for meeting that goal. The document expressly

states at various points that the goal of the strategy is "continued improvement" of visibility in the Gorge. To achieve that goal, the air agencies' recommendation essentially is to rely on existing pollution control measures—notably, the Regional Haze Program. That is, under the strategy, the air agencies will "assess improvements in visibility every five years when the Regional Haze Plan is updated," and will compare the improvement trend in the Gorge to the improvement trend in the nearby Mt. Hood and Mt. Adams wilderness areas. By the air agencies' current estimations, existing pollution control measures will "provide a path forward for continued visibility improvement over time." However, to the extent that "the air agencies find that Gorge haze levels are increasing rather than decreasing as expected, the air agencies will investigate the reasons and consult with the Gorge Commission to discuss possible remedies."

Thus, the *Columbia River Gorge Air Study and Strategy* sets forth a goal ("continued improvement" in visibility); a framework for achieving the goal (compliance with existing pollution control measures, including mandates, benchmarks, and timelines for improving visibility across the surrounding region, as established by the Regional Haze Program); criteria by which to determine whether the goal has been met (continued monitoring); and a contingent plan in the event that the goal is not met (further consultation between the air agencies and the commission). Given those features, we are not persuaded by petitioner's contention that the *Columbia River Gorge Air Study and Strategy* was not actually a "regional air quality strategy" within the meaning of the management plan. We therefore reject petitioner's first assignment of error.

In its second assignment of error, petitioner argues that, even if the *Columbia River Gorge Air Study and Strategy* can be called a "strategy," it fails to carry out the requirements of the Scenic Area Act to protect and enhance air quality or Gorge resources. Specifically, petitioner contends that the air quality strategy "focuses exclusively on visibility, leaving unaddressed the other air quality problems in the Scenic Area and ignoring the Gorge's other resources affected by poor air quality."

Although the air agencies focused their strategy on visibility, scenic resources and visibility issues were not their exclusive focus. The regional air quality strategy explicitly addresses public health concerns (particulate matter and ozone standards) and ecological effects, including excess deposits of nitrogen and acid. But, rather than addressing those issues separately, the air agencies used visibility as a surrogate for other pollution issues. The strategy explains:

> "Because *pollutants that impair visibility in the Gorge are the same that can affect broader ecosystem issues in the Gorge,* the air agencies believe that the strategies set forward in this document to reduce haze pollution would both, directly and indirectly, *benefit all the valued resources that must be protected under the Scenic Area Act.*"

(Emphasis added.) Another section of the strategy similarly explains that haze reduction will have corresponding benefits for public health, as well as natural and cultural resources: "The primary focus of these regional haze plans is on visibility improvement; however, this haze reduction work will also have general benefits for public health, as well as reducing acid deposition that can threaten other important natural and cultural resources."

Nothing in the Scenic Area Act or the management plan mandates that a regional air quality strategy individually address each type of resource—scenic, cultural, recreational, and natural—listed in the Scenic Area Act. The air agencies' focus on visibility as a surrogate for other pollution concerns was a legally permissible approach, and the commission acted within its discretion to approve that strategy.[3]

In sum, petitioner has not demonstrated that the commission erred in approving the *Columbia River Gorge Air Study and Strategy* as the regional air quality strategy for the scenic area. Although the strategy does not include the elements that petitioner believes it should, neither the management plan nor the Scenic Area Act requires those elements in a regional air quality strategy. Our role on

---

[3] Petitioner also argues that the strategy violates the Scenic Area Act because the strategy does not address new sources of pollution or require the air agencies to take action if pollution levels remain constant. Neither of those arguments is well taken, and we reject them without discussion.

judicial review is not to determine whether the commission could have approved a *better* strategy; rather, the question before us is whether the commission's exercise of discretion to approve the strategy was inconsistent with the management plan or in violation of the Scenic Area Act. And, in light of that standard of review, ORS 196.115(3)(d), we affirm the commission's decision.

Affirmed.